UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ESSEX SURGICAL, L.L.C., *et al.*,

Plaintiffs,

v.

AETNA LIFE INS. CO., *et al.*,

Defendants.

Case No. 23–cv–03286–WJM–ESK

OPINION AND ORDER

**KIEL, U.S.M.J.**

  **THIS MATTER** having come before the Court on the motion (Motion) by plaintiffs — Essex Surgical, L.L.C. (Essex Surgical); Mark R. Drzala MD, P.C., d/b/a N.J. Spine Specialists, LLC (Drzala); Mitchell F. Reiter MD, P.C., d/b/a N.J. Spine Specialists, LLC (Reiter); and Kevin A. McCracken MD, P.C., d/b/a Ortho. & Spine Ctr. of N.J., PA (McCracken) — to either: (1) remand this case in its entirety to New Jersey state court for lack of subject-matter jurisdiction; or (2) sever certain claims and remand other claims (ECF No. 18); and defendants — (1) Aetna Life Ins. Co., Aetna Health, Inc., and Aetna Health Ins. Co. (collectively, Aetna); (2) Insmed, Inc. (Insmed); (3) Schools Health Ins. Fund a/k/a SHIF (SHIF); and (4) Johnson & Johnson — opposing the Motion (ECF No. 19); and plaintiffs having filed a reply (ECF No. 20); and the parties having filed supplemental letters in support of and in opposition to the Motion (ECF Nos. 24, 25, 27, 28, 29, 30); and the Court finding:

  1. Plaintiffs are separate New Jersey-based medical practices and are not within the network of approved providers for Aetna's insureds. (ECF No. 1-3 pp. 2–4, 8.) Plaintiffs brought this case in the Superior Court of New Jersey to recover insurance reimbursements under state law for medical services rendered to seven different patients (Patients) for whom Aetna allegedly either provided coverage or administered coverage. (*Id.* p. 4.) Plaintiffs also allege that Aetna is the "agent for certain administrative services" for the other defendants. (*Id.* pp. 5, 6.)

  2. Essex Surgical seeks reimbursement for medical services rendered to the Patients identified as T.A., D.A., D.L., K.S., T.M. and N.S. (*Id.* p. 2.) Drzala seeks reimbursement for medical services rendered to the Patient identified as D.P., as well as for Patients D.L. and K.S. (*Id.* p. 3.) Reiter seeks

reimbursement for medical services rendered to Patient K.S.  (*Id.*)  McCracken seeks reimbursement for medical services rendered to Patient D.P.  (*Id.*) Plaintiffs allege that Aetna reimbursed them for the services provided to the Patients at rates that were unreasonably low.  (*Id.* pp. 4, 8.)  Defendants then removed this case from state court pursuant to the preemption afforded by the Employee Retirement Income Security Act (ERISA).  (ECF No. 1 pp. 3–6.) Defendants alternatively raised diversity jurisdiction as a basis for removal, arguing that any nondiverse defendants were fraudulently joined in an effort to improperly avoid diversity.  (*Id.* pp. 7–10.)

3. On July 14, 2023, plaintiffs filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure (Rule) 41(a)(1)(A) only as to the claims brought by Drzala and McCracken seeking reimbursement on behalf of Patient D.P.  (ECF No. 17.)  In doing so, plaintiffs alleged that defendant Johnson & Johnson would also be necessarily dismissed, as only D.P.'s claims concerned that particular defendant.  (*Id.*)

4. Later that same day, plaintiffs filed the Motion.  (ECF No. 18.) Plaintiffs argue that the removal under ERISA was improper because defendants failed to: (a) attach certain documents related to the underlying health plans; (b) attach valid assignments from the Patients; (c) address whether the underlying health plans contained anti-assignment provisions; and (d) address whether all of the underlying health plans are encompassed by ERISA.  (ECF No. 18-1 pp. 10, 15, 16.)  Plaintiffs further argue that there is no alternate basis for removal under diversity because all of the defendants are not diverse from all of the plaintiffs.  (*Id.* p. 40.)  However, in reference to their attempt to voluntarily dismiss the claims brought in relation to the services provided to Patient D.P., plaintiffs concede that "if … an isolated claim was preempted [under ERISA], the balance of claims should be severed and remanded."  (*Id.* p. 11; *see also id.* p. 47 (plaintiffs conceding that the claims brought in relation to Patient D.P. are preempted by ERISA).)

5. Defendants argue the following in opposition:

> [Patient] K.S. was enrolled in the Insmed plan, [Patient] N.S. was enrolled in the … SHIF … Plan, and member D.P. was enrolled in the J[ohnson] & J[ohnson] Group Health Plan.  The SHIF plan is a non-federal governmental plan not governed by ERISA.  The Insmed and J[ohnson] & J[ohnson] Plans are governed by ERISA.  Tellingly, the plans for the other members were not identified in the

>  Complaint because most (if not all) were issued by non-diverse plan sponsors.

(ECF No. 19 p. 9 (citations omitted).)

6. Defendants also continue to argue that the non-Aetna defendants were fraudulently joined, and that diversity jurisdiction would exist even if the claims were not preempted by the application of ERISA. (*Id.* pp. 12–16.) Defendants further suggest that "if the Court is inclined to sever and remand, then the proper course would be to sever the claims into six [*sic*] different actions for each individual member prior to remanding." (*Id.* p. 20.)

7. To further complicate matters, plaintiffs advise in a supplemental letter that: (a) some of the Patients were not covered by ERISA-exempt health plans; and (b) "for five of these surgeries, two or three of the plaintiff-medical providers rendered the services concurrently." (ECF No. 24 pp. 3, 4.)

8. Plaintiffs' attempt to voluntarily dismiss the claims concerning Patient D.P. is not an efficient solution to the issues raised in the Motion. Plaintiffs cite to Rule 41(a)(1)(A) without specifying whether the dismissal is with prejudice, and thus such a dismissal is deemed to be without prejudice by default. *See* Fed.R.Civ.P. 41(a)(1)(B) (providing that "[u]nless the notice … states otherwise, the dismissal is without prejudice"). As a result, plaintiffs would not be prevented from bringing the claims concerning D.P. in state court again, and consequently defendants would not be prevented from simply removing those claims to federal court again.

9. Given the disjointed and conflicting arguments presented by the parties, it is apparent that a resolution on the issue of a remand is premature at this juncture. Limited discovery is necessary to ascertain which of the claims concerning each Patient are arguably preempted by ERISA in the first instance.

10. It is well-settled law that under the doctrine of complete preemption afforded by ERISA, a defendant employee-welfare-benefit plan (EWB Plan) may seek to remove a claim asserted under state law by a plaintiff medical provider seeking reimbursement for medical services provided to a Patient covered by the EWB Plan. *See Atl. ER Physicians Team, Pediatrics Assocs., P.A. v. UnitedHealth Grp., Inc.*, No. 20-20083, 2021 WL 4473117, at *2 (D.N.J. Sept. 30, 2021) (citing *N.J. Carpenters & Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) and *Pascack Valley Hosp., Inc. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004)). Whether a properly-removed case that has been instituted by a medical provider is then viable in federal court may depend upon, among other things: (a) whether or not the Patient executed a valid assignment of benefits in the medical provider's favor

to give that provider standing to assert the claims therein; and (b) whether or not the specific EWB Plan contains a valid and enforceable anti-assignment clause that is applicable to all claims. *See Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 228 (3d Cir. 2020); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018); *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372–73 (3d Cir. 2015).

11. It is unclear at this juncture which of the Patients were covered by an EWB Plan, and thus whether certain claims would be independently and properly removable under ERISA. In addition, each non-Aetna defendant is not connected to each Patient. (*See* ECF No. 1-3 pp.5, 6 (alleging only Patient K.S. was provided insurance through Insmed, only Patient N.S. was provided insurance through SHIF, and only Patient D.P. was provided insurance through Johnson & Johnson, and not alleging anything further as to the other Patients).) This lack of clarity stems from plaintiffs' insistence on filing one grouped case for all of the Patients, rather than having filed seven separate cases, *i.e.*, one case per Patient. Thus, the Court is being asked to potentially resolve under one civil action number whether ERISA preemption applies and alternatively whether diversity exists concerning claims brought for medical services rendered to:

      (a)    Patient D.L. by Essex Surgical and Drzala;

      (b)    Patient K.S. by Essex Surgical, Drzala, and Reiter;

      (c)    Patient D.P. by Drzala and McCracken;

      (d)    Patient T.A. by Essex Surgical;

      (e)    Patient D.A. by Essex Surgical;

      (f)    Patient T.M. by Essex Surgical; and

      (g)    Patient N.S. by Essex Surgical.

12. Furthermore, for each Patient who is ultimately found to be covered by an EWB Plan, the Court will be required to discern whether a valid assignment of benefits was executed, and whether a valid anti-assignment clause existed even if the Patient executed a valid assignment of benefits. As a result, it appears that each claim brought on behalf of each Patient will require: (a) separate motion practice; (b) separate discovery demands; (c) separate relief; (d) the eventual entry of separate judgments; (e) separate appeals from those separate judgments; and (f) other separate litigation activity.

13. Whether litigating in state court as plaintiffs had originally planned or in federal court as a result of the removal, plaintiffs have placed an undue burden

4

on the judiciary and court staff by proceeding under one civil action number here. The Court is authorized "on just terms" to "sever any claim against a party." Fed.R.Civ.P. 21; *see also DirecTV, Inc. v. Leto*, 467 F.3d 842, 844–45 (3d Cir. 2006) (holding that inconveniently-grouped claims "may be severed and proceeded with separately" upon a court's own initiative at any stage of the action and on terms that are just); *Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 320 n.1 (N.D. Tex. 2011) (noting that the court had severed plaintiff's claims pursuant to Rule 21 "in the interest of allowing for a more efficient disposition of this matter"). The determination whether to sever claims into separate cases under separate civil action numbers to promote judicial efficiency is within my discretion. *See Acosta v. Highway Ent.*, No. 18-17725, 2020 WL 1910348, at *2 (D.N.J. Apr. 20, 2020) (holding same in severing the claims at issue).

14. I hesitate to sever the claims in this case at this juncture, even though it is my inclination to do so in order to immediately serve the needs of judicial efficiency. I am concerned that doing so might result in some claims being dismissed that should more appropriately be remanded as a matter of equity. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351–52 (1988) (holding that "a remand generally will be preferable to a dismissal" to avoid "work[ing] [an] injustice to the plaintiff," particularly if "the statute of limitations on the plaintiff's state-law claims has [since] expired" and "a dismissal w[ould] foreclose the plaintiff from litigating [the] claims"). In any event, "a remand may best promote the values of economy, convenience, fairness, and comity," because "[a]ny time a district court dismisses [a claim without prejudice], rather than remands, … the parties will have to refile their papers in state court, at some expense of time and money," and "the state court will have to reprocess the case." *Id.* at 353. I see no other equitable route out of this conundrum other than to direct the parties to engage in discovery under this civil action number to determine which of the claims the Court possesses subject-matter jurisdiction over.

Accordingly,

**IT IS** on this   **21st** day of **December 2023**   **ORDERED** that:

1. The Motion (**ECF No. 18**) is **ADMINISTRATIVELY TERMINATED** without prejudice.

2. The parties are directed to engage in limited discovery to determine which Patients are covered by EWB Plans, and which Patients are not covered by EWB Plans. The limited discovery shall be completed by **March 29, 2024**.

3. Upon the determination of the status of each Patient, the Court will address: (a) whether to sever the claims brought on behalf of the Patients who are not covered by EWB Plans and to remand those claims to state court; and (b)

whether to permit the claims brought on behalf of the Patients covered by EWB Plans to remain in this Court and to sever those remaining claims into separate actions, *i.e.*, one case per Patient.

      4.    A telephone status conference is scheduled for **March 13, 2024 at 10:00 a.m.** before Magistrate Judge Edward S. Kiel.  The dial in number 973-437-5535 and the phone conference ID is 651 221 174#.  The parties shall file a joint letter, at least three business days before the telephone status conference, advising of the status of discovery, any pending motions, and any other issues to be addressed.

                                              */s/ Edward S. Kiel*
                                              **EDWARD S. KIEL**
                                              **UNITED STATES MAGISTRATE JUDGE**